IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, ET AL., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | |
| CONSUMER FINANCIAL PROTECTION BUREAU; RICHARD CORDRAY, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE CONSUMER FINANCIAL PROTECTION BUREAU, | § § § § § | CIVIL ACTION NO. 3:17-cv-02670-D |
| *Defendants*. | § § | |

**BRIEF OF THE STATES OF TEXAS, ALABAMA, GEORGIA, INDIANA, LOUISIANA, MICHIGAN, MISSOURI, NEVADA, OKLAHOMA, SOUTH CAROLINA, UTAH, AND WISCONSIN AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

Table of Contents ....................................................................................i

Index of Authorities ...............................................................................ii

Interest of *Amici Curiae*......................................................................1

Introduction............................................................................................3

Argument................................................................................................5

I.   The CFPB's Structure Violates the Constitution's Separation of
     Powers. ..........................................................................................6

     A.   The President Must Retain the Power to Remove at Will the
          Heads of Single-Director Agencies. ........................................6

     B.   Congress May Restrict the President's Removal Power Only As
          to Independent, Multi-Headed Commissions. ..........................9

     C.   The CFPB's Structure Violates the Constitution Because It Vests
          Unchecked Power in a Single Director Removable Only for
          Cause........................................................................................12

II.  The CFPB's Unconstitutional Structure Renders All Its Actions
     Unlawful. ....................................................................................15

Conclusion............................................................................................16

Certificate of Service...........................................................................18

# INDEX OF AUTHORITIES

Page(s)

## Cases

*Alden v. Maine*,
527 U.S. 706 (1999)........................................................................12

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
513 U.S. 265 (1995) .......................................................................14

*Am. Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ..................................................................14

*Bowsher v. Synar*,
478 U.S. 714 (1986) ................................................................7, 8, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......................................................................14

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)........................................................7, 8, 9, 11, 15

*Ex parte Hennen*,
38 U.S. (13 Pet.) 230 (1839) ...........................................................8

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ...........................................................................1

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)............................................................ 4, 9, 10, 11

*Marmet Health Care Ctr., Inc. v. Brown*,
132 S. Ct. 1201 (2012) (per curiam) ...............................................14

*Massachusetts v. EPA*,
549 U.S. 497 (2007) .........................................................................1

*Metro. Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*,
501 U.S. 252 (1991) .........................................................................3

*Morrison v. Olson,*
   487 U.S. 654 (1988) (Scalia, J., dissenting)...................................................3, 13

*Myers v. United States,*
   272 U.S. 52 (1926) ........................................................................7, 8, 9, 12

*New York v. United States,*
   505 U.S. 144 (1992)...........................................................................12

*NLRB v. Noel Canning,*
   134 S. Ct. 2550 (2014) .......................................................................12

*PHH Corp. v. Consumer Fin. Prot. Bureau,*
   839 F.3d 1 (D.C. Cir. 2016), *reh'g en banc granted, order vacated*
   (Feb. 16, 2017) ...............................................................3, 4, 5, 8, 10, 11, 12, 13

*Printz v. United States,*
   521 U.S. 898 (1997) .........................................................................7, 12

*Texas v. United States,*
   809 F.3d 134 (5th Cir. 2015), *aff'd by equally divided Court,* 136 S.
   Ct. 2271 (2016) (per curiam) ...................................................................1

*Wiener v. United States,*
   357 U.S. 349 (1958) ...........................................................................11

## Constitutional Provisions, Statutes, and Rules

U.S. Const. art. II
   § 1, cl. 1....................................................................................6
   § 3..........................................................................................6

5 U.S.C. § 705..................................................................................16

12 U.S.C.
   § 5491(b)...................................................................................3, 13
   § 5491(c)...................................................................................3, 13
   § 5491(c)(3) ..................................................................................3
   § 5511(a) ....................................................................................6
   § 5511(c) ....................................................................................6
   § 5512(b)(1) ................................................................................13

§ 5514(b) ........................................................................................ 13
§ 5515(b) ........................................................................................ 13
§ 5516 .............................................................................................. 13
§ 5562 ................................................................................................6
§ 5562(c) ........................................................................................ 13
§ 5563 ................................................................................................6
§ 5563(a) ........................................................................................ 13
§ 5564 .............................................................................................. 13
§ 5565 ................................................................................................6

## Other Authorities

1 Annals of Cong. 463 (1789) (Joseph Gales ed., 1834) ...........................7

3 Joseph Story, Commentaries on the Constitution of the United
    States § 1414 283 (1833) .......................................................................7

51 Cong. Rec. 10,376 (1914)........................................................................4

81 Fed. Reg. 32,830 (May 24, 2016) ..........................................................5

82 Fed. Reg. 22,210 (July 19, 2017) ...........................................................5

Akhil Reed Amar, AMERICA'S CONSTITUTION: A BIOGRAPHY 197
    (2005) ....................................................................................................6

Kirti Datla & Richard L.Revesz, *Deconstructing Independent Agencies*
    *(and Executive Agencies)*, 98 CORNELL L. REV. 769, 794 (2013)........................ 12

Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*,
    65 ALA. L. REV. 1205, 1215 (2014) .......................................................7

THE FEDERALIST No. 70 ..........................................................................9

U.S. Department of the Treasury, *Limiting Consumer Choice,*
    *Expanding Costly Litigation: An Analysis of the CFPB Arbitration*
    *Rule* (Oct. 23, 2017) ........................................................................14–15

# Interest of *Amici Curiae*

*Amici* are the States of Texas, Alabama, Georgia, Indiana, Louisiana, Michigan, Missouri, Nevada, Oklahoma, South Carolina, Utah, and Wisconsin. States have "special solicitude" to challenge unlawful federal Executive Branch actions. *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007). Courts have long recognized that the States guard "the public interest in protecting separation of powers by curtailing unlawful executive action." *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd by equally divided Court*, 136 S. Ct. 2271 (2016) (per curiam). Those interests lie at the heart of this case: the Consumer Financial Protection Bureau's Arbitration Rule runs afoul of the separation of powers.

The States further have an interest in promoting economic development. Essential to that goal is ensuring that businesses and consumers can manage their commercial enterprises without unlawful and onerous restrictions. Not only does the Arbitration Rule offend the constitutional separation of powers, but it undermines the "long recognized and enforced [] 'liberal federal policy favoring arbitration agreements.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted).

*Amici* urge the Court to declare the Arbitration Rule unlawful, set it aside, and permanently enjoin its implementation and enforcement.[1]

---

[1] Neither *amici* nor counsel received any monetary contributions intended to fund preparing or submitting this brief. No party's counsel authored this brief in whole or in part.

# Introduction

The "ultimate purpose" of our Constitution's separation of powers "is to protect the liberty and security of the governed." *Metro. Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991). That is why the Framers "viewed the principle of separation of powers as the absolutely central guarantee of a just Government." *Morrison v. Olson*, 487 U.S. 654, 697 (1988) (Scalia, J., dissenting). This case calls upon the Court to vindicate that principle by striking down the unlawful action of an administrative agency built around a single unaccountable and unchecked administrator.

That agency—the Consumer Financial Protection Bureau (CFPB)—was created in 2010 under the Dodd-Frank Act. Charged with enforcing various federal consumer-protection laws, the CFPB is headed by a single director—not a board or a group of commissioners. The director is appointed by the President, with the advice and consent of the Senate, to a five-year term. 12 U.S.C. § 5491(b), (c). He may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 5491(c)(3).

That structure is unprecedented. Before the CFPB's creation, "no independent agency exercising substantial executive authority ha[d] ever been headed by a *single person.*" *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 6 (D.C. Cir. 2016), *reh'g en banc granted, order vacated* (Feb. 16, 2017) (emphasis in original). As a panel of the D.C. Circuit recently observed, "the Director of the CFPB possesses more unilateral authority—that is, authority to

3

take action on one's own, subject to no check—than any single commissioner or board member in any other independent agency in the U.S. Government." *Id*. at 6-7. Indeed, "the Director enjoys more unilateral authority than any other officer in any of the three branches of the U.S. Government, other than the President." *Id*. at 7.[2]

The Constitution forbids concentrated, unchecked authority in a sole, unaccountable director of an administrative agency charged with wielding executive power. And with good reason: a single-headed agency lacks the critical structural attributes that have historically justified multi-member regulatory commissions. Courts have permitted multi-member commissions on the basis that such a structure poses less threat to individual liberty than does a single-headed commission. *See, e.g.*, *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935); *see also* 51 Cong. Rec. 10,376 (1914) (Federal Trade Commission "would have precedents and traditions and a continuous policy and would be free from the effect of . . . changing incumbency"). An agency built around a sole director, by contrast, is unchecked by the constraints of group decision-making among members appointed by different Presidents. *PHH Corp.*, 839

---

[2] The D.C. Circuit's opinion in *PHH Corp.* has been vacated pending review by the en banc court. Nevertheless, *amici* submit that the panel's constitutional analysis is correct, and *amici* urge this Court to apply similar reasoning to set aside the Arbitration Rule.

F.3d at 8. A single director, in other words, "poses a far greater risk of arbitrary decisionmaking and abuse of power, and a far greater threat to individual liberty, than does a multi-member independent agency." *Id*.

In July 2017, the CFPB Director wielded that unchecked power to approve a new regulation known as the Arbitration Rule. *See* Complaint (Dkt. 1) ¶¶ 116-119; *see also* 82 Fed. Reg. 33,210 (July 19, 2017). That Rule prohibits certain entities "from using a predispute arbitration agreement to block consumer class actions in court and . . . require[s] providers to insert language into their arbitration agreements reflecting this limitation." 81 Fed. Reg. 32,830 (May 24, 2016). That rule became effective on September 18, 2017.

Because the entity that promulgated the Arbitration Rule was unlawfully constituted, the Rule cannot stand. This Court should set aside the Arbitration Rule and enjoin its enforcement.[3]

## ARGUMENT

The CFPB has the power to "seek to implement and, where applicable, enforce Federal consumer financial law" as a means of ensuring that "all consumers have access to markets for consumer financial products and services" and that the markets for such products and services are "fair, transparent, and

---

[3] *Amici* understand that on October 24, the United States Senate approved a resolution that would overturn the Arbitration Rule. (The House of Representatives approved a complementary resolution in July.) However, *amici* are not aware of any filings in this case suggesting that this resolution has taken legal effect and that the Arbitration Rule no longer carries the force of law.

competitive." 12 U.S.C. § 5511(a). The CFPB furthermore may prescribe rules implementing consumer-protection laws; conduct investigations of market actors; and enforce consumer-protection laws in administrative proceedings and in federal court, including through civil monetary penalties. *See, e.g., id.* §§ 5511(c), 5562, 5563, 5565.

The Constitution does not permit the government to consolidate those sweeping executive powers in an administrative agency headed by a sole director who may be removed only for cause. Courts should thus set aside any regulation, such as the Arbitration Rule, promulgated pursuant to that unconstitutional structure.

## I.   The CFPB's Structure Violates the Constitution's Separation of Powers.

The Constitution vests "[t]he executive power" in the President and compels him to "take care that the laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* art. II, § 3. Precedent provides that removal restrictions such as those governing the CFPB are permissible only for multi-member commissions, not for those headed by a single director.

### A.   The President Must Retain the Power to Remove at Will the Heads of Single-Director Agencies.

Article II bestows "[t]he executive power" in a single, unitary executive. It makes "emphatically clear from start to finish" that "the president would be personally responsible for his branch." Akhil Reed Amar, America's Constitution: A Biography 197 (2005). The Framers demanded "unity in the

Federal Executive" to guarantee "both vigor and accountability." *Printz v. United States*, 521 U.S. 898, 922 (1997). This unitary executive further promotes "[d]ecision, activity, secre[c]y, and d[i]spatch" in ways that a "greater number" cannot. 3 Joseph Story, Commentaries on the Constitution of the United States § 1414, at 283 (1833).

Of course, as a practical matter, the President cannot carry out the full scope of "the executive power" on his own. That is why, "as part of his executive power," the President "select[s] those who [are] to act for him under his direction in the execution of the laws." *Myers v. United States*, 272 U.S. 52, 117 (1926). Selecting assistants and deputies lies at the heart of "the executive power," which necessarily includes "the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492 (2010) (quoting 1 Annals of Cong. 463 (1789) (Joseph Gales ed., 1834) (remarks of Madison)).

The President's essential power to select administrative officials necessarily includes the power to "remov[e] those for whom he cannot continue to be responsible." *Myers*, 272 U.S. at 117; *see Bowsher v. Synar*, 478 U.S. 714, 726 (1986) ("Once an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey." (quotation marks omitted)); *PHH Corp.*, 839 F.3d at 13 ("To supervise and direct executive officers, the President must be able to remove those officers at will."); Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 ALA. L. REV. 1205, 1215

(2014) ("The text and structure of Article II provide the President with the power to control subordinates within the executive branch.").

Since the Founding, it has been understood that the removal power is necessary "to keep [executive] officers accountable." *Free Enterprise Fund*, 561 U.S. at 483. This view "soon became the 'settled and well understood construction of the Constitution.'" *Id*. at 492 (quoting *Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839)).

After all, if the President could not remove agents, then "a subordinate could ignore the President's supervision and direction without fear, and the President could do nothing about it." *PHH Corp.*, 839 F.3d at 13 (citing *Bowsher*, 478 U.S. at 726). That, in turn, would intolerably impinge on the President's duty to execute the law. *See id*. And it would upend the chain of command on which the Executive Branch relies to function properly. *See Free Enterprise Fund*, 561 U.S. at 513-14; *see also id*. at 484 ("The President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them.").

The Supreme Court first recognized and adopted this commonsense understanding in *Myers v. United States*, when it struck down as unconstitutional a statutory provision that restricted the President's power to remove certain executive officers. 272 U.S. at 176. The Court held: "[W]hen the grant of the executive power is enforced by the express mandate to take care that the laws be faithfully executed, it emphasizes the necessity for including within the executive power as conferred the exclusive power of removal." *Id*. at 122. If the

President lacked "the exclusive power of removal," he could not "take care that the laws be faithfully executed." *Id*. at 164.

The *Myers* rule has been reaffirmed repeatedly to the present day. The Supreme Court did so recently in *Free Enterprise Fund*, confirming that the President's executive power "includes, as a general matter, the authority to remove those who assist him in carrying out his duties" to faithfully execute the laws. 561 U.S. at 513-14. "Without such power, the President could not be held fully accountable" for how executive power is exercised, and "[s]uch diffusion of authority 'would greatly diminish the intended and necessary responsibility of the chief magistrate himself.'" *Id*. at 514 (quoting THE FEDERALIST No. 70, at 478 (Alexander Hamilton) (J. Cooke ed. 1961)).

## B. Congress May Restrict the President's Removal Power Only As to Independent, Multi-Headed Commissions.

The Supreme Court has recognized one narrow exception to the general rule of *Myers*. In 1935, the Supreme Court held that Congress could create "independent" agencies whose heads were not removable at will and would operate free of the President's supervision and direction. *Humphrey's Ex'r*, 295 U.S. at 624, 631-32.

*Humphrey's Executor* concerned President Franklin Roosevelt's dispute with a commissioner of the Federal Trade Commission. President Roosevelt attempted to fire the commissioner, but the commissioner contested his removal, claiming that he was protected against firing by the FTC's for-cause removal provision. *Id*. at 621-22. In presenting the case to the Supreme Court,

the Roosevelt Administration's "chief reliance" was *Myers* and its articulation of the Article II executive power. *Id.* at 626.

The Supreme Court rejected that argument and held that Article II did not forbid Congress to create an independent agency "wholly disconnected from the executive department." *Id.* at 630. The Court deferred to the FTC's "nonpartisan" nature and its charge to "act with entire impartiality" while "exercis[ing] the trained judgment of a body of experts appointed by law and informed by experience." *Id.* at 624 (quotation marks omitted). In that situation, the Court held, Congress could validly limit the President's power to remove the commissioners. *Id.* at 628-30.

Predictably, following *Humphrey's Executor*, independent agencies came to populate all corners of the federal government. These agencies "play an enormous role in the U.S. Government" and "possess massive authority over vast swaths of American economic and social life." *PHH Corp.*, 839 F.3d at 15. Many significantly affect the daily lives of countless Americans, including the Federal Reserve Board, the Federal Communications Commission, the Federal Deposit Insurance Corporation, the Securities and Exchange Commission, the National Labor Relations Board, the Consumer Product Safety Commission, and many others. *Id.* at 17.

Those independent agencies share certain specific features recognized in *Humphrey's Executor*. Specifically, their leadership includes multiple members appointed at staggered times. As the Supreme Court observed in *Humphrey's Executor*, the FTC had five members with staggered terms, and no more than

three of them could be of the same political party. 295 U.S. at 619-20. The Court thus held that the Commission was a "body of experts" deliberately "so arranged that the membership would not be subject to complete change at any one time." *See id*. at 624. Those features have come to be regarded as the *Humphrey's Executor* exception to the general rule announced in *Myers*. *See, e.g.*, *Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (upholding the removal provisions of the three-member War Claims Commission); *see also Free Enterprise Fund*, 561 U.S. at 483 ("In *Humphrey's Executor* we held that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause.").

Courts have recognized two primary justifications for permitting the limited removal of the heads of these independent agencies. First, "[i]n the absence of Presidential control, the multi-member structure of independent agencies acts as a critical substitute check on the excesses of any individual independent agency head—a check that helps to prevent arbitrary decision-making and abuse of power, and thereby to protect individual liberty." *PHH Corp.*, 839 F.3d at 26. That is, "[a]s compared to single-Director independent agencies, multi-member independent agencies help prevent arbitrary decisionmaking and abuses of power, and thereby help protect individual liberty, because they do not concentrate power in the hands of one individual." *Id*. That basic structure makes it harder for the independent agency to impinge on an individual's liberty. *See id*. It further discourages arbitrary, unsound

11

agency actions driven by the whims of one individual. *Id.* Each commissioner, in other words, acts as a check on the others through the process of "deliberative decision making." Kirti Datla & Richard L. Revesz, *Deconstructing Independent Agencies (and Executive Agencies)*, 98 CORNELL L. REV. 769, 794 (2013).

Second, multi-member independent agencies have an historical tradition since *Humphrey's Executor*. *PHH Corp.*, 839 F.3d at 28-29. In "separation of powers cases not resolved by the constitutional text alone, historical practice matters a great deal in defining the constitutional limits on the Executive and Legislative Branches." *Id.* at 23 (citing *New York v. United States*, 505 U.S. 144, 177 (1992); *Printz*, 521 U.S. at 905; *Alden v. Maine*, 527 U.S. 706, 744 (1999)). The Supreme Court confirmed as much in its recent decision in *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014), in which it relied on "[l]ong settled and established practice" to reach "a proper interpretation of constitutional provisions regulating the relationship between Congress and the President." *Id.* at 2559 (quotation marks omitted).

In sum, only independent agencies with several directors serving staggered terms can possibly fall within *Humphrey's Executor* exception to the general *Myers* rule.

## C. The CFPB's Structure Violates the Constitution Because It Vests Unchecked Power in a Single Director Removable Only for Cause.

That legal background makes this case clear-cut: the CFPB's structure is impermissible under Article II. *See Myers*, 272 U.S. at 117.

1.  Unlike the multi-member agencies approved in *Humphrey's Executor* and its progeny, the CFPB is headed by a single Director. 12 U.S.C. § 5491(b). He serves a term of five years and may be fired only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 5491(c). And he wields quintessentially "executive power," that is, the "power to enforce federal law against private citizens," or "to bring criminal prosecutions and civil enforcement actions." *PHH Corp.*, 839 F.3d at 1.[4]

The director wields that executive power as to *nineteen* different federal consumer-protection statutes. 12 U.S.C. § 5512(b)(1). He may examine and investigate individuals and entities to assess their compliance with those statutes. *Id.* §§ 5514(b), 5515(b), 5516. He may issue "civil investigative demand[s]." § 5562(c). He may institute enforcement actions and conduct "adjudication proceedings." *Id.* § 5563(a). He may sue in state or federal court to enforce consumer-protection laws. *Id.* § 5564.

Those facts are sufficient to resolve this case. *Myers* provides that the President's subordinates must be removable at will. *Humphrey's Executor* creates a narrow exception for multi-director independent agencies with directors serving staggered terms. Because the CFPB has a sole director, appointed

---

[4] To be sure, the *Humphrey's Executor* Court termed the FTC functions "quasi-legislative" and "quasi-judicial," but the Court later recognized in *Morrison* that courts today would not use those same terms. 487 U.S. at 689 n.28 ("[I]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree.").

for a term of five years and removable only for cause, its structure violates Article II by preventing the President from carrying out the executive power.

2.   The importance of enforcing the Constitution's separation of powers is no theoretical matter, as this case illustrates. With a stroke of his pen, the CFPB director has seriously undermined the strong and longstanding national policy favoring arbitration. That unlawful action only underscores the importance of this Court's role in enforcing the separation of powers.

The Federal Arbitration Act enshrines an "emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (per curiam) (quotations omitted). It provides that arbitration agreements must be "rigorously enforce[d]." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). That pro-arbitration policy protects businesses and consumers alike. *See Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 280 (1995) ("The advantages of arbitration [for consumers] are many.").

The CFPB's Arbitration Rule overlooks—and seeks to supplant—all of those sound policies. Rather than advance the strong federal policy favoring arbitration, the CFPB effectively reverses it. *See* Complaint (Dkt. 1) ¶¶ 114-132. And the result of that reversal is a long list of harms to businesses and consumers persuasively documented in the Complaint. *See* Complaint (Dkt. 1) ¶¶ 136-141. Indeed, the U.S. Department of Treasury recently issued a report projecting that the Arbitration Rule "will impose extraordinary costs" on businesses with very little (if any) benefit to consumers.  U.S. Dep't of the

Treasury, *Limiting Consumer Choice, Expanding Costly Litigation: An Analysis of the CFPB Arbitration Rule* (Oct. 23, 2017), https://www.treas-ury.gov/press-center/press-releases/Documents/10-23-17%20Analy-sis%20of%20CFPB%20arbitration%20rule.pdf.

The CFPB lacks the power to reverse national policy. This Court should set aside the Arbitration Rule and prevent the harms it promises from taking effect.

## II. The CFPB's Unconstitutional Structure Renders All Its Actions Unlawful.

Because the CFPB's structure is unconstitutional, the rules it promul-gates are necessarily invalid. In *Free Enterprise Fund*, after concluding that the Public Company Accounting Oversight Board's structure was constitutionally impermissible, the Supreme Court declared that the challengers were entitled to relief "sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." 561 U.S. at 513 (citing *Bowsher*, 478 U.S. at 727 n. 5).

The outcome in this case should be the same. The Arbitration Rule may be enforced only if and when it has been promulgated pursuant to procedures that do not violate the Constitution. Until then, the plaintiffs are entitled to declaratory and injunctive relief precluding the enforcement of the Arbitration Rule. *See id.*

## CONCLUSION

The Arbitration Rule was promulgated by an agency whose structure violates the Constitution. The Court thus should declare the Arbitration Rule unlawful. It further should stay the implementation of the Arbitration Rule pursuant to 5 U.S.C. § 705, or otherwise permanently enjoin the Director, his employees, and his agents from implementing the Arbitration Rule in any respect.

Respectfully submitted.

STEVE MARSHALL
Attorney General of Alabama

CHRISTOPHER M. CARR
Attorney General of Georgia

CURTIS T. HILL, JR.
Attorney General of Indiana

JEFF LANDRY
Attorney General of Louisiana

BILL SCHUETTE
Attorney General of Michigan

JOSH HAWLEY
Attorney General of Missouri

ADAM PAUL LAXALT
Attorney General of Nevada

MIKE HUNTER
Attorney General of Oklahoma

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

 /s/ Kyle Hawkins
KYLE HAWKINS
Assistant Solicitor General
kyle.hawkins@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for *amici curiae*

16

ALAN WILSON
Attorney General of South
    Carolina

SEAN D. REYES
Attorney General of Utah

BRAD SCHIMEL
Attorney General of Wisconsin

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2017, the foregoing document was served via electronic filing on all counsel of record in this case.

 /s/ Kyle Hawkins
KYLE HAWKINS
Assistant Solicitor General